The acts respecting the registration of grants have been previously considered. There was not a regular continuance of these acts in North Carolina before the expiration of others, as has been stated at the bar. Their legislature were in the habit of making subsequent laws authorizing registration and confirming grants which had not been registered in time. A short review from the commencement of that government will show it.
The first act was in November, 1715, allowing twelve months; their confirmatory acts in the order in which they were made, are those of April, 1741, December, 1756, April, 1760, January, 1764, November, 1766, December, 1770: eighteen months allowed. January, 1793, April, 1777, April, 1780: two years allowed; thence continued every two years until November, 1788, and when the Cession Act passed, but one year of this term had elapsed.
The first act under our own government was 1794, c. 22, two years, as usual. The next, 1797, c. 42; 1801, c. 20; 1803, c. 57; 1805, c. 16: twelve months allowed; and the Act of 1807, c. 85, allows one year where the time had expired, and two years for all others. After this view of the subject of registration, is it probable that North Carolina considered grants not registered within time as void? Surely not: nor in fact could they upon principles of law. The condition of registration expressed in the grant is a subsequent, and not a precedent one. The first part of the grant absolutely vests the estate; after which, it cannot be divested or revested without some act of the grantor; and none but the grantor or his heirs can take advantage of the breach of this condition. No stranger can do it. The grant, by a breach of condition subsequent, is not void, it is only voidable by those who made it, and no others, and remains in full force until it is thus avoided. Littleton, § 350; Co. Lit. 217 b, 218 a, 206 a and b, 179 a, 214 a and b.
As the State cannot enter for a breach of condition, they must avoid their unregistered grants by a *Page 377 
legislative act; they are incapable of doing it in any other way. When legislating on the subject, they speak of such lands as lapsed. There being no legislative act declaring the revestment of this land in the State, on account of the plaintiff's grant not having been registered, we are bound to say that the tide never was out of Hogg, and chose claiming under him.
The entry, and the manner in which it was surveyed, are the next considerations which present themselves.
The calls in all entries seem divisible into two classes.
1st. Prominent.
2d. Subordinate.
Entries should be so certain that the surveyor and others may, by reasonable exertion, ascertain the spot. After it is ascertained, the surveyor has an option to run it (so that he complies with the calls) in an oblong or square, unless where the lines of older claims interfere, when it may be run in any shape adjoining those lines; where an entry calls to adjoin a particular tract or to include a particular spot, the latitude of surveying, so as to include the spot in any part of the tract, and to run in an oblong or square, is left to the surveyor.
Calls for natural objects, such as rivers, creeks, branches, springs,c., are generally prominent calls when compared with artificial ones, such as letters on trees, lines of others, c. It is a rule of reason, as well as of law, that if all the calls of an entry cannot be complied with, those which are subordinate in point of notoriety may be rejected by the Court, and abandoned by the party, and the claim shall be valid notwithstanding ut res magis valeat quam pereat. See Hughes, 3, 14, 45, 168, 194.
The jury will inquire, whether, what is now called the Town Fork, was, when Allen's entry was made, generally known by the description of the first big creek (from the mouth in going up) that empties in Yellow Creek on the west side. When we say generally known, we mean by those persons who had opportunities of knowing the creek, and conversing with those who did. A few individuals, *Page 378 
compared with the number of others who knew the creek, calling it the first creek, would not be sufficient when the majority of persons acquainted with it called it by another name.
The length of this creek is an important inquiry with the jury. If a whole creek would be included in a survey of the size of the defendants', or Allen's, by running in an oblong, not more in length than twice its breadth, the entry is sufficiently certain, and it does not lie in the mouth of the plaintiff to say you ought to have run to the mouth of the creek, and thus injured me more than you have done; nor that you had no right to run upon other lands than those I claim. The simple question is, could the surveyor, by running the tract in any manner the law allowed, include the present interference in Allen's survey? If he could, and the defendant's grant covers it, they must hold. If the jury should be of opinion that Allen's survey could not join Ramsey, and lie on this creek too, the surveyor was correct in surveying it on this creek, provided it is the one called for in the entry.
 Verdict for the defendants.